UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at Covington

| | | |
|---|---|---|
| VICKI L. MANNING,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF THE SOCIAL SECURITY ADMINSITRATION,<br><br>Defendant. | ) | Civil Action No. 2:25-cv-00082-SCM<br><br>**MEMORANDUM OPINION AND ORDER** |

*** *** *** ***

Plaintiff Vicki L. Manning appeals the Social Security Administration's denial of her claim for Disability Insurance Benefits ("DIB"). [Dkt. 1; Dkt. 19]. Manning requests that the Court reverse the SSA's decision and remand to the SSA for further proceedings. [Dkt. 16 at 15].

In support of that request, she contends that the Administrative Law Judge ("ALJ") assigned to her case made two errors. First, Manning argues the ALJ improperly determined her residual functional capacity by failing to account for the total limiting effects of her impairments. [*Id.* at 2]. Second, she argues the ALJ erred by finding Manning could return to her past job because the ALJ failed to take into account the ALJ's finding that Manning had mild mental impairments. [*Id.* at 11]. The Court disagrees and concludes the ALJ's decision should be affirmed. Therefore, Manning's request for relief, [Dkt. 1; Dkt. 16], is **DENIED** and the Court **AFFIRMS** the ALJ's decision. [Dkt. 9 at 19–41].

## I. Background

Manning alleges that she became disabled on March 31, 2020, due to neuropathy. [Dkt. 9 at 66]. Her date last insured is March 31, 2024. [*Id.* at 23]. She filed an application for DIB on August 1, 2022, which was denied initially and upon reconsideration. [*Id.* at 66–72, 74–81]. On May 17, 2024, the ALJ assigned to her case found that she was not disabled under the Social Security Act ("Act") and thus not entitled to DIB. [*Id.* at 23].

The ALJ, following the five-step process, noted that Manning was unengaged in substantial gainful activity for the requisite period and had some severe physical impairments. [*Id.* at 23–24]. But because she still had the residual functional capacity to perform her past relevant work, she was not disabled under the Act. [*Id.* at 39].

Following the ALJ's decision, Manning requested review by the Appeals Council. [*Id.* at 11]. The Appeals Council denied her request. [*Id.* at 5–7]. Having exhausted her administrative remedies, Manning filed the instant Complaint requesting reversal and remand of the ALJ's decision. [Dkt. 1]. Manning has filed her Plaintiff's brief, [Dkt. 16], and the Commissioner has filed a response in opposition, [Dkt. 19]. This matter is now ripe for the Court's decision.

## II. Legal Standards

### A. ALJ Evaluation

To be entitled to benefits under the Act, a claimant must be adjudicated "disabled" under the definition from 20 C.F.R. § 404.1505. *See* 20 C.F.R. § 404.1501.

The Act defines a "disability" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). Whether a claimant meets that definition is initially determined by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). It is not always necessary to go through all five steps, though. The point of the five-step process is to determine whether a claimant is or is not disabled. So if a claimant is conclusively determined to be either disabled or not disabled at any one of the five steps, then the process does not need to go any further. 20 C.F.R. § 404.1520(a)(4).

First, the ALJ considers whether the claimant is engaged in "substantial gainful activity," defined as work that "[i]nvolves doing significant and productive physical or mental duties" and "[i]s done (or intended) for pay or profit." 20 C.F.R. §§ 404.1510; 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, she will be found to be not disabled. *Id.* § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the ALJ continues to step two.

Second, the ALJ determines whether the claimant has a severe impairment that meets the duration requirements. *Id.* § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If a claimant is found not to have a severe

impairment, that claimant is not disabled. *Id.* If the claimant is found to have a severe impairment, the ALJ continues to step three.

Third, the ALJ analyzes whether the claimant's impairment(s) meet or equal one of the impairments listed in Appendix 1 to Subpart P of Part 404. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); 20 C.F.R. § 404.1520(a)(4)(iii). If so, then the claimant is disabled and the analysis ends. If not, the ALJ continues to step four.

Fourth, the claimant's "residual functional capacity" and "past relevant work" are determined and considered. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing her past relevant work in light of her residual functional capacity, she will be found not disabled. *Id.* If the claimant is not so capable, the ALJ continues to step five.

Fifth, the claimant's residual functional capacity is assessed in combination with her age, education, and work experience to determine if she "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If an adjustment can be made, the claimant will be found not disabled. *Id.* If no adjustment can be made, the claimant will be found disabled. *Id.*

### B. Standard of Review

A district court reviewing an ALJ's decision to deny benefits may only consider "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405–06 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

An "ALJ's legal rulings, including his interpretation of relevant laws and regulations," are reviewed de novo. *Linden v. Comm'r of Soc. Sec.*, 131 F.4th 531, 534 (6th Cir. 2025) (citing *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018)). Factual assessments are reviewed under the substantial evidence standard. *Blakley*, 581 F.3d at 405–06. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," which is not a high threshold. *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). When there is "substantial evidence to support the ALJ's factual finding, that ruling is conclusive." *Linden*, 131 F.4th at 534; 42 U.S.C. § 405(g). This is so even where substantial evidence exists supporting a different or even opposite conclusion. *Blakley*, 581 F.3d at 406 (citing *Key*, 109 F.3d at 273).

Because of this standard, the Court will not review the entire case de novo, nor will it resolve evidentiary conflicts or reconsider questions of credibility. *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The ALJ's decision will be affirmed if substantial evidence supports it, even if the Court might have reached a different conclusion in the first instance. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

## III. Analysis

Manning raises two issues with the ALJ's decision to deny her benefits. First, she states that the ALJ's residual functional capacity findings "fail[] to set forth the 'total limiting effects' of Plaintiff's impairments." [Dkt. 16 at 1–2]. Second, she

asserts that the ALJ erred in concluding Manning could return to her prior skilled job in light of her residual functional capacity when she failed to account for Manning's mild mental impairments. [*Id.* at 1, 11]. The Court disagrees with both assertions of error.

**A. The ALJ properly accounted for Manning's physical impairments and the evidence and expert opinions related thereto when formulating and applying her residual functional capacity.**

Manning's first assignment of error is that the ALJ failed to fully account for her physical impairments when formulating and applying her residual functional capacity. [Dkt. 16 at 2–11]. In particular, Manning takes issue with the ALJ's failure to account for her alleged standing/walking issues and need for a cane. [*Id.* at 2]. But the Court cannot second-guess and overrule the factual conclusions of the ALJ where they are supported by substantial evidence. This is so even where the Plaintiff's preferred view is likewise supported by substantial evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Here, the ALJ's residual functional capacity formulation and related analysis are supported by substantial evidence.

Manning takes issue with two of the ALJ's determinations. The first is an apparent conflict between two findings. Manning highlights that the ALJ found persuasive the State Agency's findings that Manning is capable of performing light jobs. [Dkt. 9 at 38; Dkt. 16 at 6]. These State Agency findings were allegedly deemed persuasive by the ALJ even though there was a mixed record that could have supported determination that she was not capable of performing light work. [Dkt. 16 at 6]. An issue then arises, from Manning's perspective, when the ALJ found

unpersuasive APRN Natalle Melnyk's opinion that Manning needed a cane to balance and that she had standing/walking difficulties on the same set of mixed evidence. [*Id.*]. According to Manning, the existence of this mixed evidence that could support either conclusion means the ALJ's ultimate conclusions are not supported by substantial evidence. [*Id.*at 7–11]. Second, Manning takes issue with the ALJ's finding that Manning's testimony reporting standing/walking issues and need to use a cane is inconsistent with the record. [*Id.* at 6]. But the ALJ's decision should not be disturbed "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 475 (quoting *Key*, 109 F.3d at 273).

Manning's first argument can be distilled to this: Evidence exists in the record that supports findings both against and in favor of Manning, but because the ALJ decided the evidence against Manning is persuasive, the ALJ must have improperly evaluated the medical evidence before her. [Dkt. 16 at 7]. But in reaching her decision regarding Manning's residual functional capacity, the ALJ cited "substantial, legitimate evidence to support [her] factual conclusions." *Ulman*, 693 F.3d at 714. This includes medical evidence, [Dkt. 9 at 33–35]; examination findings, [*id.* at 33–35]; medical opinions, [*id.* at 28–29; 38–39]; and Manning's own allegations that were consistent with the record, [*id.* at 35–37]. Thus, the ALJ did not make mere conclusory assertions. Rather, she cited and explained the effect of real evidence in the record. Regarding opinion evidence, the ALJ stated whether she found different

opinions persuasive or unpersuasive and why. [*Id.* at 28–29, 38–39]. In stating those conclusions, the ALJ pointed to record evidence supporting a persuasiveness determination, which is sufficient to meet the articulation requirement for evaluation of medical opinions. [*Id.*]; *see Sparks v. Kijakazi*, No. 2:21-CV-102-DCP, 2022 WL 4546346, at *6–7 (E.D. Tenn. Sep. 28, 2022) (explaining the articulation requirement for medical opinions and prior administrative medical findings). Given this, the Court should not second-guess the ALJ's findings. *Ulman*, 693 F.3d at 714.

Manning cites *Angela K.P. v. Comm'r of Soc. Sec.*, No. 3:24-cv-272, 2025 WL 1564283, at *7 (S.D. Ohio June 3, 2025) for the proposition that an ALJ cannot make a "lay assertion," as the ALJ here purportedly did. [Dkt. 16 at 7–8]. While that case does, in part, stand for the proposition that an ALJ should not himself interpret "raw medical data," that is not the whole picture. *Angela K.P.*, 2025 WL 1564283, at *7–8. In that case, the court held that the ALJ erred where "the evidentiary record lack[s] any medical opinions or administrative findings," leading the ALJ to make conclusions absent such opinions. *Id.* at *9. But this is not a case where there is a "complete absence of medical opinion evidence." *Id.* at *7. To the contrary, there is substantial medical opinion evidence which the ALJ discussed. [Dkt. 9 at 28–29, 38–39]. This means the ALJ here did not commit the error of improperly weighing raw medical evidence.

Manning also makes much of 20 C.F.R. § 404.1520c and what it allegedly requires in this case. According to her, that regulation required the ALJ here to find both the State Agency's and Melnyk's opinions persuasive. [Dkt. 16 at 9; Dkt. 20 at

2]. This is because, from Manning's perspective, the facts before the ALJ were "mixed" *(i.e.*, supportive and unsupportive to her) and if the ALJ found one opinion persuasive it must have necessarily found the other persuasive. [*Id.*]. If the ALJ only found one opinion persuasive, she must have improperly "interpreted the medical facts on her own." [*Id.*]. But this label of a "mixed" factual record appears to an inference stated by Manning. It does not appear that the ALJ ever described the record as mixed. Instead, the ALJ stated which opinions she found persuasive and stated why they were supported by or consistent with the record. [Dkt. 9 at 38–39]. This is what § 404.1520c(b)(2) requires—explaining whether an opinion is supported by and consistent with the record and assigning persuasive value to that opinion. The ALJ here did exactly that.

Manning states that § 404.1520c requires a "two-step analysis" "under certain circumstances" that would require an ALJ to consider all five § 404.1520c(c) factors for both of the (supposedly) equally persuasive opinions. [Dkt. 16 at 9]. Such circumstances allegedly exist here because of the mixed record. [Dkt. 20 at 1–2]. But the triggering circumstances are not the mere possibility that an ALJ *could* find two opinions equally persuasive under the record. Instead, that so-called two-step analysis is triggered under the regulation when the ALJ indeed finds two medical opinions equally well-supported and consistent with the record. § 404.1520c(b)(3). The ALJ here did not make such a finding. She found the State Agency opinions supported by and consistent with the record, but not Melnyk's. [Dkt. 9 at 38–39].

Thus, she was not required to undertake any analysis that might be required when a finding of equal persuasiveness is made.

The bottom line is that, for a district court to affirm the ALJ's decision, it "must be supported by substantial evidence in the record as a whole." *Jones*, 336 F.3d at 475. That standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley*, 581 F.3d at 406 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Because of this, even assuming Manning is correct that the record is "mixed" in that it supports both a favorable and unfavorable determination, it is well within the province of the ALJ to make a choice. The ALJ here made that choice, ultimately finding that Manning has the residual functional capacity to perform light work. [Dkt. 9 at 31]. In so doing, the ALJ identified substantial supportive evidence, and considered the full record, which includes accounts of Manning's standing/walking limitations. [*Id.* at 32–33, 35, 38, 53–59]. The ALJ also explained how that evidence informed her conclusions regarding the persuasiveness of opinion evidence. [*Id.* at 38–39]. While Manning would have preferred that the ALJ further discuss and rely on Melnyk's opinion, the ALJ stated a "clear path of reasoning" for her evaluation of the relevant medical opinions. *James H. v. Kijakazi*, No. 3:21-CV-252-CRS, 2022 WL 4465159, at *5 (6th Cir. Sep. 26, 2022); *see also Sallaz v. Comm'r of Soc. Sec.*, No. 23-3825, 2024 WL 2955645, at *7 (6th Cir. June 12, 2024) ("[W]eighing conflicting evidence was properly within the ALJ's role.").

Finally, Manning reiterates her position that the ALJ engaged in a "lay" analysis of raw medical data, this time resulting in the incorrect conclusion that Manning's statements are inconsistent with the record. But, as explained above, the ALJ did no such thing. The ALJ analyzed Manning's statements in light of medical opinions and other evidence in the record—not mere raw medical data—which was proper here. *See Angela K.P.*, 2025 WL 1564283, at *7 ("*Given* [*the*] *complete absence of medical opinion evidence*, the ALJ appears to have improperly interpreted raw medical data when assessing Plaintiff's RFC." (emphasis added)); [Dkt. 9 at 36–39].

Manning essentially asserts that the record supports findings both for and against her. Even assuming this is the case, it was not improper for the ALJ to analyze the evidence and determine that substantial evidence supported a finding of a residual functional capacity of light work. Making such a decision based on substantial evidence in the record is ultimately what the ALJ is there to do. Having done so here, this Court will not now overturn the ALJ's decision.

### B. The ALJ adequately considered Manning's non-severe mental impairments in formulating and applying her residual functional capacity.

Manning's second assignment of error is that the ALJ erred in determining her residual functional capacity at step four because she did not explicitly account for her mild mental impairments. [Dkt. 16 at 11]. Importantly, Manning does not raise any issues with the ALJ's determination that her mental impairments were only mild.[1]

[1] Even if Manning did make such an argument, substantial evidence in the record supports the ALJ's finding that her mental impairments were mild and not severe. [Dkt. 9 at 27–29, 315–17, 324–26, 363–64, 427–39, 447, 505–06, 510–13, 701–05, 837, 849–54, 869–70, 871–82].

[*See id.* at 12–16]. Instead, Manning takes issue with the ALJ's purported total exclusion of mental impairments from the residual functional capacity analysis. [*Id.* at 13].

But the Sixth Circuit has held—as decisions in this district have recognized—that an ALJ is not required to explicitly discuss a claimant's mental impairments at step four when the context shows the ALJ "adequately considered all of a claimant's medical impairments in formulating a residual functional capacity analysis." *Napier v. Comm'r of Soc. Sec.*, 127 F.4th 1000, 1007 (6th Cir. 2025) (citing *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851 (6th Cir. 2020)). Put differently, precedent in the Sixth Circuit "makes clear that . . . there is no requirement that the ALJ 'specifically discuss each non-severe impairment in the RFC assessment to demonstrate that the impairments were considered.'" *McFall v. Comm'r of Soc. Sec.*, No. 7:24-CV-17-REW, 2025 WL 354987, at *4 (E.D. Ky. Jan. 31, 2025) (quoting *Smith v. Comm'r of Soc. Sec.*, 715 F. Supp. 3d 994, 999 (E.D. Mich. 2024)) (collecting cases). Here, as in *Napier*, the record "demonstrates that the ALJ adequately accounted for [Manning's] mental impairments in formulating her residual functional capacity." *Napier*, 127 F.4th at 1007.

In her initial explanation of the five-step process, the ALJ noted that she "must consider all the claimant's impairments, including impairments that are not severe" in determining Manning's residual functional capacity. [Dkt. 9 at 24]. At step two, when conducting the "paragraph B" mental function analysis, the ALJ explicitly concluded that Manning's mental limitations were no more than "mild or slight." [*Id.*

at 27]. After that, the ALJ stated that, while the "paragraph B" analysis at step two is not a residual functional capacity assessment, the ALJ's residual functional capacity assessment at steps four and five "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." [*Id.* at 29]. Finally, the ALJ stated that, in coming to her conclusion at step four, she "considered all the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity," as well as "the entire record," and "all [the claimant's] symptoms." [*Id.* at 29, 31].

These are the exact contextual indicia the Sixth Circuit has held demonstrate proper consideration of mild mental limitations as part of the residual functional capacity analysis, even where the mental limitations are not explicitly mentioned in steps four and five. *Napier*, 127 F.4th at 1003; *Emard*, 953 F.3d at 851; *Hobbs v. Bisignano*, No. 2:25-cv-00062-SCM, 2026 WL 672954, at *3–4 (E.D. Ky. Mar. 10, 2026). Accordingly, this objection to the ALJ's determination fails.

## IV. Conclusion

The ALJ's conclusions of fact are supported by substantial evidence and the ALJ did not commit any errors of law. The ALJ's decision should therefore be upheld. Accordingly, the Court **DENIES** Manning's request for judgment, [Dkt. 1; Dkt. 16], and **AFFIRMS** the ALJ's decision under sentence four of 42 U.S.C. § 405(g). The Court will enter a separate judgment.

Signed this 14th day of September, 2026.

S. Chad Meredith, District Judge
United States District Court
Eastern District of Kentucky